**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

DR. KEITH BELL,

        Plaintiff,

    v.

LANE KIFFIN,

        Defendant.

Case No. 3:24-CV-231-MPM-RP _____

JURY DEMAND

## COMPLAINT

For his Complaint against Defendant, Lane Kiffin, Dr. Keith Bell states as follows:

### PARTIES

1.      Dr. Keith Bell is domiciled in the State of Texas.

2.      Lane Kiffin is domiciled in the State of Mississippi.

### JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1338 because Dr. Bell's claims arise under the Copyright Act of 1976 (the "Copyright Act").

4.      This Court may exercise personal jurisdiction over Kiffin because he is domiciled in the State of Mississippi.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400 because Kiffin resides and may be found in this district.

### FACTUAL ALLEGATIONS

**I.**    **Dr. Bell**

6.      Dr. Keith Bell is a world-renowned swimming psychologist.

7.      Dr. Bell is considered the father of swimming psychology and is internationally recognized as one of the foremost experts on sports and human performance enhancement.

8.      Dr. Bell has written ten books and scores of journal and magazine articles on performance psychology.

9.      Dr. Bell has served as the Sports Psychologist for National and Olympic teams for the U.S., Canada, Australia, New Zealand, Hong Kong, and the Cayman Islands.

10.     Dr. Bell is the eleven-time recipient of the International Swimming Hall of Fame's prestigious Buck Dawson Book of the Year Award.

**II.     *Winning Isn't Normal***

11.     In 1981, Dr. Keith Bell authored the book *Winning Isn't Normal* (the "WIN Book").

12.     Dr. Bell published the WIN Book in 1982.

13.     Since its publication, the WIN Book has become a timeless bestseller.

14.     The WIN Book expresses Dr. Bell's philosophy for outperforming the competition in sports and all other endeavors.

15.     The WIN Book has been widely disseminated, particularly among competitive athletes and coaches.

16.     In 1989, Dr. Bell obtained a copyright registration for the WIN Book.

17.     A copy of that registration is attached hereto as **Exhibit 1**.

18.     In 2017, Dr. also obtained a copyright registration for a portion of the WIN Book called the Winning Isn't Normal passage, a succinct summary of the core precepts of the WIN Book (the "WIN Passage" and, together with the WIN Book, the "Copyrighted Works").

19.     A copy of that registration is attached hereto as **Exhibit 2**.

20.     The WIN Passage is the heart of the Book.

21.     Dr. Bell has sold a substantial amount of merchandise featuring the WIN Passage.

22.     The WIN Passage is one of the most widely read literary works in the competitive-sports community.

**III.    Kiffin's Copyright Infringement in 2016**

23.     Kiffin is a football coach. He is currently the head coach of the football team for the University of Mississippi, which is a member of the Southeastern Conference.

24.     In 2016, Kiffin re-tweeted the WIN Passage on his Twitter account.

25.     Dr. Bell sent cease-and-desist letters to Kiffin, informing him that his unauthorized copying of the WIN Passage constituted copyright infringement.

26.     In response, Kiffin acknowledged receipt of the cease-and-desist letters and agreed to take down the infringing Twitter post.

**IV.    Kiffin's Willful Copyright Infringement in 2022**

27.     Kiffin's annual base coaching salary at the University of Mississippi exceeds $8 million.

28.     The Southeastern Conference is notoriously competitive, and head-coaching jobs at Southeastern Conference schools are notoriously difficult to keep.

29.     Both fans and school leaders at the University of Mississippi expect Mr. Kiffin to build and maintain a winning football team.

30.     Mr. Kiffin knows that his job security—and his accompanying compensation—depends on winning.

31.     In order to win, Mr. Kiffin knows that he must recruit the best possible players, using all available means.

32.     As Mr. Kiffin explained at a recent press conference, "We got to coach better, but we as coaches got to recruit better in our thinking and evaluations and so forth."

33.     Social media is a key recruitment tool for Mr. Kiffin.

34.     As Mr. Kiffin stated during an interview with CBS Sports:

We walk into homes or families come here to visit and almost the first thing every time – a lot of times by a parent – is 'we love your Twitter, we love following you, it's awesome. We feel like we know you, even though we haven't met you. And to me, how much money could you pay for that in recruiting, to have someone feel like they know you when they've never met you?

35.     On March 20, 2022—despite knowing that Dr. Bell owns the Copyright Works— Kiffin posted to his Twitter account a passage titled "WINNING ISN'T NORMAL."

36.     A screenshot of that Twitter post is attached hereto as **Exhibit 3**.

37.     Kiffin's Twitter post is a nearly exact copy of the WIN Passage.

38.     Kiffin's Twitter post is substantially, and even strikingly, similar to the WIN Passage.

39.     Mr. Kiffin posted the WIN Passage on Twitter as part of his overall effort to recruit the best possible players in order to retain his job and its accompanying over $8 million annual salary.

40.     Mr. Kiffin's copying of the WIN Passage is thus of a commercial nature.

41.     Mr. Kiffin's infringing use of the WIN Passage also shared substantially the same purpose as Dr. Bell: to motivate and provide inspiration to athletes.

42.     Mr. Kiffin's infringing use of the WIN Passage was not transformative in any way. Mr. Kiffin's infringing use did not convey any new meaning or message, nor was his posting of the WIN Passage a commentary on the WIN Passage itself.

43.     Dr. Bell sent a cease-and-desist letter to Kiffin, asking that he cease his unlawful and willful copyright infringement of the Copyrighted Works.

44.     Kiffin has failed to comply with Dr. Bell's demands.

45.     Kiffin's leaving up his infringing post is irrefutable evidence of willful infringement.

46.     Kiffin's March 20, 2022 post has resulted in the unlawful distribution of the Copyrighted Works to over 500,000 of Kiffin's followers.

47.     Further, Kiffin's March 20, 2022 post has resulted in over 400 retweets and over 300,000 additional distributions.

## COUNT I
### COPYRIGHT INFRINGEMENT

48.     Dr. Bell re-alleges the allegations contained in the foregoing paragraphs.

49.     Dr. Bell owns the Copyrighted Works.

50.     Without the consent of Dr. Bell, Kiffin unlawfully exploited the Copyrighted Works through his March 20, 2022 Twitter post.[1]

51.     Kiffin committed this copyright infringement intentionally and in reckless disregard of the rights of Dr. Bell. Kiffin's conduct constitutes willful copyright infringement.

52.     As a direct and proximate result of Kiffin's infringement, Dr. Bell is entitled to his actual damages together with any of Kiffin's profits pursuant to 17 U.S.C. § 504(b).

---

[1] Kiffin's copyright infringement during 2016 is relevant to this action because it demonstrates, among other things, Kiffin's access to the Copyrighted Works and his willfulness. Dr. Bell, however, expressly does not bring a claim for copyright infringement arising from that 2016 infringement. Dr. Bell's claim is limited to Kiffin's infringement through his March 20, 2022 Twitter post. *See Petrella v. MGM*, 572 U.S. 663, 671, 134 S. Ct. 1962, 1969 (2014) ("[W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong.").

53.     Alternatively, Dr. Bell is entitled to recover statutory damages for each infringing act.

54.     Kiffin's infringement has caused, and will continue to cause, irreparable injury to Dr. Bell, for which there is no adequate remedy at law. Dr. Bell is therefore entitled to a permanent injunction pursuant to 17 U.S.C. § 502.

55.     Dr. Bell is also entitled to recover his fees and costs incurred in this action pursuant to 17 U.S.C. § 505.

## JURY DEMAND

56.     Dr. Bell demands a jury on all issues so triable.

## DEMAND

WHEREFORE, Dr. Bell requests that the Court:

A.     Enter judgment in favor of Dr. Bell and against Kiffin for damages, including actual and/or statutory damages, in an amount to be determined at trial, including accrued interest;

B.     Enter a permanent injunction barring Kiffin from exploiting the Copyrighted Works;

C.     award Dr. Bell his reasonable costs, expenses, and attorneys' fees incurred in connection with this action; and

D.     grant such other and further relief as the Court may deem just and proper.

August 6, 2024

Respectfully submitted,

/s/ John R. McCarroll, III
John R. McCarroll, III (MS #09292)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 31803
(901) 524-5000
(901) 524-5024 (facsimile)
mmccarroll@bpjlaw.com

-and-

Tim Warnock (TN 12844)
(*pro hac vice forthcoming*)
LOEB & LOEB LLP
35 Music Square East
Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com

Keane Barger (DC 90023661)
(*pro hac vice forthcoming*)
LOEB & LOEB LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
(202) 618-5000
(202) 618-5001 (facsimile)
kbarger@loeb.com

*Counsel for Dr. Keith Bell*